IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03203-GPG

KENNETH GREEN,

    Applicant,

v.

MICHAEL MILLER, Warden Crowley County Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

## ORDER OF DISMISSAL

---

Applicant, Kenneth Green, is a prisoner in the custody of the Colorado

Department of Corrections at the Crowley County Correctional Facility in Olney Springs,

Colorado.  Mr. Green has filed *pro se* an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (ECF No. 1) (the "Application") challenging the validity of

his convictions in two Denver District Court cases.  The relevant state court case

numbers are 11CR2366 and 11CR2449.

On December 16, 2014, Magistrate Judge Gordon P. Gallagher ordered

Respondents to file a Pre-Answer Response limited to addressing the affirmative

defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court

remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or

both of those defenses in this action.  On December 24, 2014, Respondents filed their

Pre-Answer Response (ECF No. 10) arguing that the Application is untimely and that

Mr. Green's claims are unexhausted and procedurally defaulted.  On February 3, 2015,

Mr. Green filed his Reply to Pre-Answer Response (ECF No. 14) arguing, in part, that the one-year limitation period should be equitably tolled.

On February 25, 2015, Magistrate Judge Gallagher entered an order giving Respondents an opportunity to file a supplement to the Pre-Answer Response that addresses Mr. Green's equitable tolling argument.  On March 6, 2015, Respondents filed their Supplemental Pre-Answer Response (ECF No. 16).  On March 26, 2015, Mr. Green filed his Reply to the Supplemental Pre-Answer Response (ECF No. 17).

The Court must construe the Application and other papers filed by Mr. Green liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss the action.

In case number 11CR2366 Mr. Green agreed to plead guilty to sexual assault on a child and child abuse and he was sentenced to twenty years in prison plus an indeterminate term of ten years to life on probation.  (*See* ECF No. 10-1 at 10.)  In case number 11CR2449 Mr. Green agreed to plead guilty to possession of marijuana with intent to distribute and he was sentenced to a concurrent term of six years in prison. (*See* ECF No. 10-2 at 8.)  He was sentenced in both cases on February 16, 2012.  (*See* ECF No. 10-1 at 10; ECF No. 10-2 at 8.)  He did not appeal.

On June 19, 2012, Mr. Green filed in case number 11CR2449 a motion to reconsider his sentence.  (*See* ECF No. 10-2 at 8.)  On July 2, 2012, the trial court denied the motion to reconsider.  (*See id.*)  Mr. Green did not appeal.

Beginning on March 7, 2014, Mr. Green commenced filing in both cases a series

of postconviction motions.  (*See* ECF No. 10-1 at 7-9; ECF No. 10-2 at 5-7.)  The state

court docketing records provided by Respondents indicate the trial court has entered

orders denying some of these motions, although there is no indication that the trial court

has ruled on either the Rule 35(c) motion filed on March 7, 2014, or a supplemental

Rule 35(c) motion filed on May 2, 2014.  (*See id.*)  According to Mr. Green these

motions and others remain pending.  Mr. Green has not appealed from any of the trial

court's orders denying his postconviction motions.

The instant action was commenced on November 25, 2014.  The Court

construes the Application liberally as presenting the following six claims for relief:

1.   Mr. Green's guilty plea was not voluntary, knowing, and intelligent.

2.   Mr. Green was arrested without a warrant or probable cause in violation of the Fourth Amendment.

3.   Mr. Green's home and car were searched illegally without a search warrant or valid consent in violation of the Fourth Amendment.

4.   Mr. Green was not taken promptly before a magistrate following his warrantless arrest to be advised of his rights and for a judicial determination of probable cause in violation of due process.

5.   The defense was not provided a copy of the presentence report in a timely manner in violation of due process.

6.   Mr. Green's excessive sentence in the aggravated range violates due process and resulted from prosecutorial misconduct.

Respondents first argue that the Application is barred by the one-year limitation

period in 28 U.S.C. § 2244(d).  That statute provides as follows:

(1)  A 1-year period of limitation shall apply to an application

3

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In order to apply the one-year limitation period, the Court first must determine the date on which the judgment of conviction became final.  *See* 28 U.S.C. § 2244(d)(1)(A). Respondents assert that Mr. Green's convictions became final when the time to file a direct appeal expired.  Pursuant to the version of Rule 4(b) of the Colorado Appellate Rules applicable at the time Mr. Green was sentenced on February 16, 2012, he had

forty-five days to file a notice of appeal.[1]  Because Mr. Green did not appeal, the

judgment became final on April 2, 2012, when the time to file a notice of appeal

expired.[2]  Mr. Green does not argue that his convictions became final on some other

date.

Mr. Green also does not allege or argue that he was prevented by

unconstitutional state action from filing this action sooner, he is not asserting any

constitutional rights newly recognized by the Supreme Court and made retroactively

applicable to cases on collateral review, and he knew or could have discovered the

factual predicate for his claims before his conviction became final.  *See* 28 U.S.C. §

2244(d)(1)(B) - (D).  Therefore, the Court finds that the one-year limitation period began

to run when his convictions became final on April 2, 2012.

Mr. Green did not initiate this action within one year after April 2, 2012.

Therefore, the next question the Court must address is whether the one-year limitation

period was tolled for any period of time.  Pursuant to 28 U.S.C. § 2244(d)(2), a properly

filed state court postconviction motion tolls the one-year limitation period while the

motion is pending.  An application for postconviction review is properly filed within the

meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the

applicable laws and rules governing filings."  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

These requirements include:

(1) the place and time of filing; (2) the payment or waiver of

---

[1]The current version of Colo. App. R. 4(b), amended effective July 1, 2012, allows forty-nine days to file a notice of appeal.

[2]The forty-fifth day after February 16, 2012, was Sunday, April 1, 2012.  Therefore, the filing deadline extended until Monday, April 2, 2012.  *See* C.A.R. 26(a).

> any required filing fees; (3) the obtaining of any necessary
> judicial authorizations that are conditions precedent to filing,
> such as satisfying any filing preconditions that may have
> been imposed on an abusive filer; and (4) other conditions
> precedent that the state may impose upon the filing of a
> post-conviction motion.

*Habteselassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000) (footnote omitted).

The issue of whether a state court postconviction motion is pending for the purposes of § 2244(d)(2) is a matter of federal law, but "does require some inquiry into relevant state procedural laws." *See Gibson v. Klinger*, 232 F.3d 799, 806 (10th Cir. 2000). The term "pending" includes "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999). Furthermore, "regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law." *Gibson*, 232 F.3d at 804.

Mr. Green did not file a state court postconviction motion with respect to case number 11CR2366 until March 7, 2014. Because more than one year of untolled time elapsed before the first postconviction motion was filed, the motion did not toll the one-year limitation period in accordance with § 2244(d)(2). *See Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006) (stating that properly filed state court postconviction motions toll the one-year limitation period only if they are filed within the one-year limitation period). For the same reason, the postconviction motions Mr. Green filed after March 7, 2014, also did not toll the one-year limitation period.

6

Respondents concede that the one-year limitation period was tolled pursuant to §
2244(d)(2) with respect to case number 11CR2449 while Mr. Green's postconviction
motion for sentence reconsideration filed in that case on June 19, 2012, was pending.
The motion for sentence reconsideration was denied on July 2, 2012, and statutory
tolling continued for an additional forty-nine days, or until August 20, 2012, when the
time to appeal expired.  However, the seventy-seven days after April 2, 2012, and
before June 19, 2012, count against the one-year limitation period.  Therefore, although
the one-year limitation period with respect to 11CR2449 expired approximately two
months after it expired with respect to case number 11CR2366, the state court
postconviction motions filed on and after March 7, 2014, still were filed too late to toll the
one-year limitation period in case number 11CR2449.

For these reasons, the instant action is barred by the one-year limitation period in
the absence of some other reason to toll the one-year limitation period.  Mr. Green
argues in his reply to the Pre-Answer Response that the Application should not be
dismissed as untimely because his medical condition during 2012 and 2013 prevented
him from filing a postconviction motion or habeas corpus application.  The Court will
consider this argument in the context of equitable tolling.

The one-year limitation period in § 2244(d) is not jurisdictional and may be tolled
for equitable reasons.  *Holland v. Florida*, 560 U.S. 631, 649 (2010).  However, a
showing of excusable neglect is not sufficient to justify equitable tolling.  *See Gibson*,
232 F.3d at 808.  Equitable tolling is appropriate only if the petitioner shows both "that
he has been pursuing his rights diligently" and "that some extraordinary circumstance
stood in his way" and prevented him from filing in a timely manner.  *Pace v.*

7

*DiGuglielmo*, 544 U.S. 408, 418 (2005); *see Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).  The diligence prong requires "reasonable diligence" and not the "maximum feasible" diligence.  *Holland*, 560 U.S. at 653.  Furthermore, in order to demonstrate he pursued his claims diligently, the petitioner must "allege with specificity 'the steps he took to diligently pursue his federal claims.'"  *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (quoting *Miller*, 141 F.3d at 978).  Finally, the diligence requirement applies to the pursuit of state postconviction relief as well as the preparation and filing of a federal habeas application.  *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005).

Mr. Green specifically alleges the following in support of his argument that his medical condition impeded his ability to file a timely habeas corpus application:

> The Applicant on or about February 23, 2012, at the Denver Reception and Diagnostic Center (D.R.D.C.) was diagnosed by Nurse Practitioner Mandy with a Hyperactive Thyroid condition also known as "Graves Diseases" with an accompanying cancerous goutierus [sic] mass on his neck. The diagnosis was of the most aggressive form of this highly degenerative disease.  Please note after the Applicant's initial arrest on June 8, 2011[,] the Applicant's condition worsened to December 18, 2012, the date the defendant underwent lifesaving surgery at the Denver Health Medical Center 777 Bannock St. Denver, CO to remove the mass, the Applicant lost one third of his body weight and suffered every symptom, one in which is loss of cognitive ability and as a result the Applicant was mentally incapable of preparing a postconviction appeal or habeas petition.  The Applicant underwent multiple C.A.T. scans, C.T. scans, ultra sound, Radioactive Iodine Therapy, blood test, suffered from Thyroid Storm, suffered extreme weight loss, suffered from various internal organ problems, was transported from Crowley County Correctional Facility C.C.C.F. at least 17 plus times to Denver Health Medical Center in which a total drive time of seven and a half hours each trip, lost the use of his legs and for at least one week was confined to C.C.C.F. medical cell in a wheel chair for 24 hours a day, subjected to various overnight stays in C.C.C.F. medical department, and

> shipped back and forth between D.R.D.C. and Cell house 5
> multiple times.  In addition, the Applicant after the date of
> surgery was confined to D.R.D.C. unit 5 until March 2013,
> under twenty-two to twenty-three hour lock down conditions
> and another 9 months or so of Thyroid Hormone (TH)
> replacement therapy to restore balance, and to return to
> normal weight.

(ECF No. 14 at 1-2.)  Mr. Green concedes in his Reply to the Supplemental Pre-Answer

Response that any equitable tolling based on his medical condition ended on February

27, 2013, when he was returned to the Crowley County Correctional Facility.  (*See* ECF

No. 17 at 4.)

Mr. Green recognizes that his first postconviction Rule 35(c) motion, filed on

March 7, 2014, was filed more than a year after February 27, 2013.  However, he

contends this action is timely because he is entitled to equitable tolling for a small

number of additional days due to a lack of access to the prison law library during facility

lockdowns in March, October, and November 2013, and because the Rule 35(c) motion

filed on March 7, 2014, must be deemed filed on February 28, 2014, the date he alleges

he mailed that motion to the state court.  According to Mr. Green's calculations, the Rule

35(c) motion filed on March 7, 2014, was filed with sixteen days of the one-year

limitation period remaining to run and, as a result, the Rule 35(c) motion filed on March

7, 2014, tolled the one-year limitation period pursuant to § 2244(d)(2).

It does not appear that Mr. Green's medical condition is an extraordinary

circumstance that made him incapable of pursuing his claims for the entire period from

February 2012 until February 27, 2013.  The state court docketing records reveal that

Mr. Green actually filed a motion to reconsider his sentence case number 11CR2449 on

June 19, 2012.  Mr. Green's allegations regarding temporary facility lockdowns and a

9

concomitant lack of access to the prison law library also are not an extraordinary circumstance that justifies equitable tolling.  *See Gibson*, 232 F.3d at 808 ("a claim of insufficient access to relevant law . . . is not enough to justify equitable tolling."); *Dill v. Workman*, 288 F. App'x 454, 457 (10th Cir. 2008) (routine prison lockdowns generally do not qualify as an extraordinary circumstance that would justify equitable tolling).

However, even assuming Mr. Green's medical condition was an extraordinary circumstance sufficient to justify equitable tolling of the one-year limitation period for the entire period from April 2, 2012, when the one-year limitation period began to run, until February 27, 2013, the instant action still is untimely because Mr. Green fails to demonstrate he was reasonably diligent in pursuing his claims.  As discussed above, equitable tolling is appropriate only if Mr. Green demonstrates both the existence of an extraordinary circumstance that prevented him from filing and that he pursued his rights diligently.  *Pace*, 544 U.S. at 418.  Thus, even if the Court assumes Mr. Green's medical condition is an extraordinary circumstance, that circumstance, by itself, is not enough to justify equitable tolling.

Mr. Green does not allege what steps he took to diligently pursue his claims prior to February 27, 2013, despite his medical condition.  More importantly, he fails to allege any facts that describe his efforts to diligently pursue his claims for a full twelve months after February 27, 2013.  Mr. Green provides a detailed list of the motions he filed in state court on and after March 7, 2014, but the absence of specific factual allegations demonstrating he pursued his claims with reasonable diligence prior to March 7, 2014, means equitable tolling is not appropriate.  *See Yang*, 525 F.3d at 928 ("An inmate bears a strong burden to show specific facts to support his claim of extraordinary

10

circumstances and due diligence." (brackets and internal quotation marks omitted)).

Finally, Mr. Green claims for the first time in his Reply to the Supplemental Pre-Answer Response that he is actually innocent.  (*See* ECF No. 17 at 7.)  A credible showing of actual innocence provides a gateway to consideration of an otherwise untimely claim of constitutional error as an equitable exception to the one-year limitation period in § 2244(d).  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  However, "tenable actual-innocence gateway pleas are rare."  *Id.*  To be credible, a claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see McQuiggin*, 133 S. Ct. at 1936 (applying actual innocence test in *Schlup* to one-year limitation period in § 2244(d)).  The petitioner then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Schlup*, 513 U.S. at 327; *see also McQuiggin*, 133 S. Ct. at 1924.  Although the actual innocence test does not require a showing of diligence, untimeliness "bear[s] on the credibility of evidence proffered to show actual innocence."  *McQuiggin*, 133 S. Ct. at 1935.  Thus, "a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown."  *Id.* at 1928.

Mr. Green's vague and conclusory assertion that he is actually innocent falls far short of the showing necessary to support a credible claim of actual innocence under *Schlup*.  Therefore, the Court finds no basis for an equitable exception to the one-year

11

limitation period based on actual innocence.

For these reasons, the action will be dismissed as barred by the one-year limitation period.  The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he also must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.  Accordingly, it is

ORDERED that the Application (ECF No. 1) is denied and the action is dismissed because the Application is untimely.  It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

DATED at Denver, Colorado, this __13th__ day of ___April_____, 2015.

BY THE COURT:


___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, Senior Judge
United States District Court